IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ARMOUR D. STEPHENSON, III, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-2494-JWL |
| | ) | |
| HONEYWELL INTERNATIONAL, INC., | ) | Consolidated with: |
| | ) | No. 07-2498-JWL |
| Defendant. | ) | No. 07-2499-JWL |
| | ) | No. 07-2501-JWL |
| _____ | ) | |

## MEMORANDUM AND ORDER

This diversity action, removed from state court, arises out of an airplane crash that

resulted in the deaths of the pilot and all four passengers. This consolidated action

encompasses the wrongful death claims under Kansas law of the heirs of the four

passengers against defendant Honeywell International, Inc., who repaired one of the

airplane's engines.[1] The matter is presently before the Court on the parties' motions to

exclude expert testimony and for summary judgment. As more fully set forth in this

opinion, the Court rules as follows: Defendant's motion to exclude expert testimony by

plaintiffs' expert Donald Sommer (Doc. # 178) is **denied**. Plaintiffs' motion to exclude

expert testimony by defendant's experts Gregory Feith, John Maris, and Allen Parmet

---

[1]The pilot's claims and the claims against a fuel pump manufacturer have been
settled. In addition, the Court has previously granted defendant summary judgment on
survival claims brought by the passengers' estates. *See* Memorandum and Order, Oct.
5, 2009 (Doc. # 170).

(Doc. # 182) is **granted in part and denied in part**. The motion is granted with respect to Dr. Parmet's opinions concerning the pilot's ethanol level, medication side effects unrelated to susceptibility to spatial disorientation, "rogue pilot" behavior, and the credibility of the pilot's spouse, and such testimony will be excluded at trial; the motion to exclude is denied in all other respects. Plaintiffs' motion for summary judgment on defendant's attempt to compare the fault of the pilot (Doc. # 180) is **denied**. Finally, defendant's motion for summary judgment on plaintiffs' strict liability and warranty claims (Doc. # 176) is **granted**, and defendant is awarded judgment on those claims.

## I. <u>Stipulated Facts</u>

The parties have stipulated to the following facts, as set forth in the pretrial order.

Armour Stephenson, Jr., Shirley Stephenson, Kevin Holzer, and Lewis Smith died in an airplane crash shortly after takeoff on January 21, 2005, in Overland Park, Kansas. The aircraft was piloted that day by James Kingston, who also perished in the crash. For a period of eight years leading up to the flight, Mr. Kingston had been diagnosed with and treated for diabetes and hypertension, and he took prescription medications for those conditions and for high cholesterol.

At the time of its departure from Johnson County Executive Airport in Overland Park, the aircraft was loaded in excess of its maximum certified gross weight. Air traffic control instructed the pilot to climb to an altitude of 3000 feet and to execute a right turn to a heading of 130 degrees. The aircraft entered a climbing turn after takeoff and

climbed to approximately 2200 feet, after which time the pilot did not communicate with air traffic control. The aircraft subsequently emerged from the cloud deck and crashed to the ground while in a right banked turn.

The aircraft's engines were manufactured by defendant's predecessor-in-interest in 1979. In 2003, the left engine was sent to defendant for repair, and the engine was returned to service as airworthy.

Plaintiffs, heirs of the decedent passengers, bring wrongful death claims against defendant under Kansas law, based on theories of negligent repair of the left engine, strict product liability, and breach of implied warranty. Plaintiffs contend that the crash was caused by the failure in flight of the left engine, which failure resulted from defendant's negligent repair of that engine in 2003. Defendant disputes that the left engine failed during the flight, and it contends that the crash likely resulted from the pilot's disorientation or incapacitation during flight.

## II.    **Defendant's Motion to Exclude Expert Testimony**

Defendant moves to exclude the opinions of plaintiffs' expert, Donald Sommer, concerning the aircraft's flight path and airspeed before the crash.

### A.    *Governing Standards*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert scientific testimony.  *See id.* at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999).  The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this Court must undertake a two-part analysis:  first, the Court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*.  *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is

the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes.

To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on a substantial foundation and would tend to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). In determining whether the proffered testimony is reliable, the Court assesses whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts in issue. *See Daubert*, 509 U.S. at 592-93. The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id.* at 592-94. In *Kumho Tire*, however, the Supreme Court emphasized that these four factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundations. *Id.* (quoted in *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004)). The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

  B. *Analysis*

In seeking to exclude Mr. Sommer's opinions concerning the aircraft's flight path and airspeed, defendant first argues that those opinions are impermissibly based on the opinions of a non-disclosed, non-testifying expert, Richard Boscardin. In his deposition, Mr. Sommer testified that his staff reconstructed the flight path, using certain computer programs, under his instruction and control. Mr. Sommer also testified that Mr. Boscardin, an independent contractor, performed the MANAT analysis for the reconstruction under Mr. Sommer's control and using Mr. Sommer's inputs. MANAT is a computer program that reduces radar data for a flight to figures for pitch, roll, yaw, speed, angle, and other characteristics.

Defendant argues that because a person other than Mr. Sommer performed the MANAT analysis, the reliability of that method cannot be tested. Defendant was free to ask any questions concerning that analysis in its deposition of Mr. Sommer, however, and defendant has not shown that Mr. Sommer failed or was unable to answer any such questions. Moreover, because plaintiffs do not intend to offer Mr. Boscardin as a witness at trial, they were not required to disclose him as an expert, and his qualifications are not at issue. *See* Fed. R. Civ. P. 26(a)(2).

Defendant also argues that Mr. Sommer should not be permitted merely to parrot another expert's opinions. *See, e.g.*, *Ash Grove Cement Co. v. Employers Ins. of Wausau*, 246 F.R.D. 656, 661 (D. Kan. 2007) (expert was not permitted simply to parrot or recite opinions and knowledge of other expert and fact witnesses). Despite Mr. Sommer's reference to the MANAT "analysis" performed by Mr. Boscardin, however,

there is no indication that Mr. Boscardin independently formed opinions concerning the flight path that Mr. Sommer merely adopted without his own judgment. Mr. Sommer relied on something prepared by another at Mr. Sommer's direction; there is no rule prohibiting an expert's use of assistants if the ultimate opinions are those of the expert and he is qualified to give those opinions. Defendant has not challenged Mr. Sommer's qualifications, and, as noted above, defendant was free to inquire of Mr. Sommer concerning the flight path yielded by the use of the MANAT computer program.

The cases cited by defendant are unavailing. Defendant cites the Tenth Circuit's unpublished opinion in *Beck's Office Furniture and Supplies, Inc. v. Haworth, Inc.*, 1996 WL 466673 (10th Cir. Aug. 16, 1996), in which the court noted that an expert "may not merely parrot the opinions of other experts whose conclusions are not themselves in the record." *Id.* at *7 (citing *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993)). As explained above, Mr. Sommer is not merely parroting the opinions of Mr. Boscardin, but instead formed his own opinions based on work performed at his direction by Mr. Boscardin. In *Beck's*, the court specifically stated that experts may rely on the opinions of others if experts in that field would rely on such opinions. *See id.*[2] The Tenth Circuit's opinion in *TK-7* is also easily distinguished from this case. In that case, the testifying expert had no idea how certain expert projections, on which he relied,

---

[2]Although defendant did not raise the issue in the present motion, it will be incumbent on plaintiffs to establish from Mr. Sommer at trial that experts in his field rely on such assistance from others. *See* Fed. R. Evid. 703.

were formed and thus no basis for assuming their reliability, *see TK-7*, 993 F.2d at 732-33; in this case, Mr. Sommer directed the reconstruction of the flight path.  Finally, in *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002), the court excluded opinions of an expert that relied in turn on opinions outside his own expertise.  *See id.* at 613-15.  Again, in the present case, defendant has not challenged Mr. Sommer's own qualifications in relation to the MANAT program.  Moreover, in *Dura*, the Seventh Circuit noted that an expert may use assistants in formulating his own opinion; that those assistants need not themselves testify; that the opposing party is free to depose those assistants; and that the expert may be questioned about his supervision of those assistants and whether reliance on such assistants is standard practice in the field.  *See id.* at 612-13.[3]

There is no basis in this case to conclude that Mr. Sommer improperly relied on any opinions formed by others that are outside of his own expertise.  Accordingly, the Court rejects this basis for exclusion of Mr. Sommer's opinions.

Defendant also argues that Mr. Sommer's use of the MANAT program is not

---

[3]The Court is not persuaded by the statement by the Tenth Circuit in *6816.5 Acres of Land v. United States*, 411 F.2d 834 (10ths Cir. 1969), that "expert opinion may not be based upon the opinion of others, either in evidence or not in evidence." *Id.* at 839-40 (quoting *Taylor v. B. Heller & Co.*, 364 F.2d 608, 613 (6th Cir. 1966)).  That statement was dictum, and the case preceded the promulgation of Fed. R. Evid. 702 and 703 relating to expert testimony and its bases.  Moreover, as noted above, the evidence indicates that Mr. Sommer did not base his opinion on any independent opinion by Mr. Boscardin, but instead formed his own opinion based on the results of a computer program run by Mr. Boscardin using information from Mr. Sommer.

sufficiently reliable because it is "circular"—that is, that the program simply yields the same airspeed inputted into the program as an assumed variable. Mr. Sommer testified that he chose an estimated airspeed of 116 knots to be used in the MANAT program, which then yielded a result of 116 or 117 knots. Defendant points to Mr. Sommer's concession in his deposition that the airspeed result was a reflection of the airspeed figure inputted into the program.

The Court rejects this argument. Mr. Sommer testified that the program takes the initial airspeed figure and calculates the true speed, based on smoothing of data and accounting for windspeed and other factors. Thus, the program does not simply kick out the same number entered in. Mr. Sommer testified that, if he had selected an initial speed such as 200 or 210 knots, that the result would be numbers "roughly at that magnitude;" he did not testify that the MANAT program performs no calculation, as defendant suggests in this argument.[4] Defendant has not challenged the reliability of the MANAT program as a tool for flight path reconstruction.

Finally, the Court rejects defendant's argument in its reply brief that Mr. Sommer lacked a basis for his inputted airspeed of 116 knots. Mr. Sommer testified that he chose that figure based on best single engine rate of climb speed for the aircraft, and defendant

_____

[4]The deposition suggests that Mr. Sommer used 116 knots as the assumed figure and the MANAT program yielded a result of 117 knots, which indicates that the program did perform some calculation using the initial figure. The Court cannot confirm this variance, however, as defendant chose not to submit the exhibit representing the results of the MANAT analysis that Mr. Sommer discussed in his deposition.

has not provided any reason why that basis is not sufficient.

Accordingly, the Court denies defendant's motion to exclude Mr. Sommer's opinions relating to his flight path reconstruction and the plane's airspeed.

### III.  Plaintiffs' Motion to Exclude Expert Testimony

Plaintiffs have moved to exclude certain testimony by defendant's experts Gregory Feith, John Maris, and Allen Parmet.[5]

####  A.  *Expert Testimony by Gregory Feith*

Defendant has disclosed Mr. Feith as an expert in aviation investigation and reconstruction.  Plaintiffs seek to exclude Mr. Feith's opinion of how a needle "slap mark" in the plane's left propellor tachometer was caused, arguing that the opinion is not supported by any scientific method or evidence.  The Court rejects this argument.

In his expert report, Mr. Feith sought to rebut Mr. Sommer's opinion that the slap mark at 150 RPMs indicates that the left engine was operating at a very low power at impact.  Mr. Feith stated that Mr. Sommer had no basis for his opinion that the mark was produced at the moment of impact.  Mr. Feith stated that if Mr. Sommer was correct that the propellor was "feathered", then it would not have been rotating and the tachometer

_____

[5]The Court rejects plaintiffs' challenge to declarations by the experts submitted by defendant in opposition to plaintiffs' motion to exclude, as the Court routinely considers evidence (including testimony at a hearing) submitted by the parties relating to an expert's qualifications or the reliability of the expert's opinions.  The Court concludes that defendant has not improperly relied on any new opinions or bases contained in the declarations in opposing the motion to exclude.

would have been at or near zero at impact.  Mr. Feith then opined as follows:

> The propeller tachometer is an electrically operated instrument with a magnetic pick-up.  In my opinion it is most probable that the instrument was indicating the appropriate high propeller RPM for the phase of flight when electrical power was disrupted during the initial impact sequence. The loss of electrical power likely caused the left propeller tachometer needle to be displaced from its actual value towards its normal parked position (zero).  Further, it is likely that as the needle was transiting towards its parked position, the instrument sustained impact damage when the needle happened to be over the 150 RPM indexing mark.

Mr. Feith then identified other reasons why he believed that Mr. Sommer's theory of a left engine failure is incorrect.

The Court concludes that there is a sufficient basis for Mr. Feith's opinion concerning the slap mark.  Mr. Feith has properly relied on his experience as an accident investigator, and he has provided reasons for his opinion that the propeller would not have been rotating at 150 RPMs at impact, including under either plaintiffs' theory (the propeller would have been at zero) or defendant's theory (no left engine failure occurred).  Mr. Feith then provided his opinion of the most likely cause of the slap mark, based on his experience and his other opinions.  Plaintiffs may address in their cross-examination at trial any issues concerning the details of the electrical power disruption suggested by Mr. Feith.  Mr. Feith has also adequately explained the bases for his opinions about Mr. Sommer's theory and a propeller in a feathered position.  Therefore, the Court will not exclude Mr. Feith's testimony about the needle slap mark.

The Court also rejects plaintiffs' apparent challenge to Mr. Feith's conclusion that Mr. Sommer's opinion that the pilot maintained control of the airplane is baseless.

Plaintiffs suggest that this opinion is without any articulated basis. Elsewhere in his report, however, Mr. Feith stated his opinion that the plane was not in the pilot's control and identified the bases for that opinion.

Accordingly, the Court denies plaintiffs' motion to exclude expert testimony by Mr. Feith.

### B. Expert Testimony by John Maris

Defendant intends to offer expert testimony by John Maris, a test pilot who performed simulations to test certain scenarios for this crash. Plaintiffs argue that the simulations are unreliable and that Mr. Maris had no bases for his inputs and assumptions in running the simulations.

The Court concludes that Mr. Maris's opinions are sufficiently reliable and based on sufficient evidence. Mr. Maris identified the bases for his inputs and assumptions in his report. Plaintiffs have not submitted any evidence to rebut Mr. Maris's evidence that such simulations are reliable in his field. Accordingly, the Court denies plaintiffs' motion to exclude testimony by Mr. Maris.

### C. Expert Testimony by Allen Parmet

Defendant also intends to offer expert testimony by Dr. Parmet, a flight surgeon. Plaintiffs challenge the admissibility of five opinions by Dr. Parmet.

First, plaintiffs challenge Dr. Parmet's opinion that the plane's airspeed was 250 to 350 knots at impact. Plaintiffs argue that Dr. Parmet is not qualified to offer such an opinion. Dr. Parmet explained the relevant qualifications in his declaration, however,

and plaintiffs have not rebutted that evidence or explained why those qualifications are deficient. The Court also rejects plaintiffs' argument that the airspeed opinion was speculative and without basis. Dr. Parmet noted in his report that his airspeed opinion was based on the injuries and debris observed at the crash site, and he established the reliability of that method in his declaration, which plaintiffs failed to rebut. Therefore, the Court denies the motion to exclude this opinion.

Second, plaintiffs seek to exclude Dr. Parmet's expert testimony concerning the presence of ethanol in the pilot's liver. In his report, Dr. Parmet noted that the level of ethanol exceeded the FAA limit for operating an aircraft, and further stated as follows: "The presence of ethanol in his tissues may have been due to the use of alcohol although the possibility of fermentation from elevated glucose levels and extremely poor control of his diabetes or from post-mortem fermentation is also possible and clinical correlation would be necessary."

The Court agrees with plaintiffs that such testimony should be excluded. In his report, Dr. Parmet could not state a probable cause for the high level of ethanol without "clinical correlation"; thus, his opinion about possible causes is impermissibly speculative. Moreover, the minimum probative value of allowing the expert to list these possible causes without knowing which applied in this case would be substantially outweighed by the danger of unfair prejudice to the plaintiffs, who would then be required to attempt to differentiate between diabetes and post-mortem fermentation to rebut the pure speculation from Dr. Parmet. *See* Fed. R. Evid. 403. Accordingly, the

13

Court grants plaintiffs' motion to exclude this testimony by Dr. Parmet.

Third, plaintiffs seek to exclude Dr. Parmet's testimony concerning the side effects of the various medications taken by the pilot. Plaintiffs argue that such testimony is speculative because the pilot's actual medical condition during the flight cannot be determined. Defendant's experts have opined that the crash was caused by the pilot's spatial disorientation, and Dr. Parmet stated in his report that the pilot's medical condition (diabetes, hypertension) made him more susceptible to spatial disorientation. It is in this context that Dr. Parmet noted the medications' side effects. Thus, the Court concludes that Dr. Parmet may testify concerning the medications and their side effects to the extent that they relate to the pilot's susceptibility to spatial disorientation. Other possible side effects have not been shown to have relevance, and therefore the Court would exclude testimony concerning side effects unrelated to spatial disorientation. Thus, plaintiffs' motion to exclude such testimony is granted in part and denied in part.

Fourth, plaintiffs seek to exclude Dr. Parmet's opinion that the pilot here exhibited behavior characteristic of a "rogue pilot". In his report, Dr. Parmet stated that certain risk-taking by the pilot—failing to disclose his medical condition in his FAA medical examination and elsewhere, overloading the subject aircraft with excessive weight—fit the pattern of psychological behavior knows as a "rogue pilot". In his declaration, Dr. Parmet insists that although not a diagnosis, the "rogue pilot" pattern of behavior is recognized by experts in his field. "Rogue pilot" behavior may in fact be a valid description used by experts in this field, but defendant has not shown that the label

has any relevance here. The facts that the plane was overweight, the pilot took certain medications, and the pilot lied about his medical condition are undisputed here. Providing a label to cover those actions is not relevant in the absence of some other action by the pilot alleged by defendant that is disputed in the case. Moreover, to the extent that there is any minimal probative value, it is substantially outweighed by the risk of prejudice and confusion of issues for the jury. *See* Fed. R. Evid. 403. Therefore, the Court grants plaintiffs' motion to exclude Dr. Parmet's opinion that the pilot's behavior fit the profile of a "rogue pilot".

Fifth, plaintiffs challenge the admissibility of the statement by Dr. Parmet in his report that he finds the pilot's wife's testimony that she was unaware of her husband's medical condition to be "less than credible." Defendant does not dispute that Dr. Parmet may not offer his opinion on the credibility of another witness. Accordingly, the Court grants plaintiffs' motion to exclude any such testimony by Dr. Parmet.

The Court thus grants in part and denies in part plaintiffs' motion to exclude certain expert testimony by defendant's experts, as set forth herein.

## IV.    Plaintiff's Motion for Summary Judgment – Fault of the Pilot

Defendant has indicated its intent to compare the fault of the pilot, assuming that it is found liable for negligence. Plaintiffs seek summary judgment on the issue of the pilot's negligence.

### A.    *Summary Judgment Standard*

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this,

sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## B. *Analysis*

Plaintiffs argue they are entitled to summary judgment on the issue of the comparison of the pilot's fault because defendant cannot offer evidence that any negligence by the pilot caused the crash. Specifically, plaintiffs argue that there is no evidence that any fault by the pilot in overloading the plane or in falsifying his medical condition caused the crash. The Court concludes, however, that defendant has submitted evidence that negligence by the pilot contributed to any crash caused by a left engine failure in accordance with plaintiffs' theory of liability.[6]

Defendant's evidence of the pilot's negligence comes primarily from its experts. For instance, Mr. Feith, the accident investigator, proffered the opinion that, assuming

_____

[6]Because there is sufficient evidence to withstand summary judgment concerning the pilot's negligence under plaintiffs' theory, the Court does not address at this time whether there is also evidence that the pilot negligently caused a crash involving only spatial disorientation (defendant's theory) or some other scenario in which the engine did not fail.

a left engine failure, the pilot did not act reasonably or prudently in taking the actions

ascribed to him by plaintiffs' expert (for instance, slowing to 117 knots or attempting to

return to the airport). Mr. Maris, the test pilot, opined that the excess weight of the

plane, for which the pilot was responsible, reduced the single-engine performance of the

plane. Mr. Maris further stated that if the pilot did act as theorized by plaintiffs' expert,

then he performed poorly in failing to stabilize the aircraft for a successful outcome and

in attempting to return to the airport. Defendant also submitted the testimony of a lay

witness who knew the pilot and had flown this particular aircraft, who testified that, with

appropriate technique, the plane could be flown and landed safely on a single engine.

The Court concludes that this evidence is sufficient to create a jury question concerning

the pilot's negligence. Accordingly, the Court denies plaintiffs' motion for summary

judgment on that issue.[7]


### V.    Defendant's Motion for Summary Judgment – Strict Liability and Implied Warranty Claims

Defendant seeks summary judgment on plaintiffs' strict liability and implied

warranty claims. Plaintiffs concede that those claims are based not on any allegation of

---

[7]In discussing this particular evidence, the Court does not consider or intend any comment on the other evidence or possible negligent acts by the pilot discussed by the parties in their briefs. Moreover, because the expert opinions cited by the Court may be found in the experts' reports, the Court need not consider plaintiffs' challenge to the expert declarations submitted by defendant in opposition to summary judgment. Any arguments concerning improperly supplemental expert opinions or bases may be raised at a later time as appropriate.

a defect in the left engine when manufactured and sold in 1979, but instead on the allegation that the engine was defective after defendant's repair in 2003. Defendant argues that Kansas law does not recognize a claim for strict product liability or breach of implied warranty based on the defective repair of a product without an accompanying sale of the product. The Court agrees, and it therefore concludes that defendant is entitled to summary judgment on these claims.

With respect to strict liability, Kansas has adopted Section 402A of the Second Restatement of Torts. *See Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 114, 795 P.2d 915, 923 (1990) (citing *Brooks v. Dietz*, 218 Kan. 698, 702, 545 P.2d 1104, 1108 (1976)). Section 402A provides for liability of one who *sells* a defective product. *See* Restatement (Second) of Torts § 402A (1965); *see also Savina*, 247 Kan. at 114, 795 P.2d at 923 ("This court adopted the doctrine of strict liability in tort for the sale of a dangerously defective product as set out in the Restatement (Second) of Torts § 402A . . ."). Similarly, the Kansas Supreme Court has stated that, to demonstrate a breach of the implied warranty of merchantability, the plaintiff must show that the good's defect was present when it left the *manufacturer's* control. *See Dieker v. Case Corp.*, 276 Kan. 141, 162, 73 P.3d 133, 146-47 (2003) (citing, *inter alia*, K.S.A. § 84-2-314); *see also* K.S.A. § 84-2-314 (providing for implied warranty in a contract for the *sale* of goods).

Thus, Kansas courts have recognized strict liability and implied warranty claims only in the context of the sale of a product. Plaintiffs rely on the recent opinion by the Kansas Court of Appeals in *Gaumer v. Rossville Truck and Tractor Co.*, 41 Kan. App.

2d 405, 202 P.3d 81 (2009), *review granted* (Kan. Nov. 5, 2009), in which the court held that strict liability could apply to the sale of a used product. *See id.* The court noted that neither Section 402A of the Second Restatement (providing for strict liability for sellers) nor K.S.A. § 60-3306 (providing for immunity to certain sellers) contains an exception for used products. *See Gaumer*, 41 Kan. App. 2d at 411-13, 202 P.3d at 86-87. Both Section 402A and K.S.A. § 60-3306 refer to "sellers" of products, however. Thus, *Gaumer* does not aid plaintiffs' position here, but instead confirms that strict liability requires a defect at the time of the sale of the product. *See also Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 755, 861 P.2d 1299, 1310-11 (1993) (in holding that a manufacturer does not have a post-sale duty to warn, the Kansas Supreme Court noted that "[a] negligence analysis is more appropriate than an application of strict liability in the post-sale context").

Plaintiffs insist that defendant's repair of the left engine in 2003 was comprehensive enough to amount to a remanufacture or complete overhaul of the engine. There is no evidence, however, that title to the engine did not remain with the owner during repair or that the engine was re-sold by the defendant at that time.[8] Plaintiffs have not cited a single case supporting the extension of these causes of action to the repair of a product without its subsequent sale, whether under Kansas law or otherwise. The

---

[8]Under the Kansas Product Liability Act, a "manufacturer" includes a product "seller" who remanufactures a product or part "before its sale to a user or customer." K.S.A. § 60-3302(b). Thus, whether or not defendant remanufactured the engine, strict liability would require a subsequent sale of the engine by defendant.

majority of other jurisdictions have refused to impose strict liability on mere repairers of products. *See, e.g.*, *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950, 955 & n.5 (5th Cir. 1979) (citing cases); *Watts v. Rubber Tree, Inc.*, 848 P.2d 1210, 1214 n.3 (Or. Ct. App. 1993) (citing cases); E.C. Cowley, Jr., *Application of Rule of Strict Liability in Tort to Person Rendering Services*, 29 A.L.R.3d 1425 (1970 & Supp. 2009).

In the absence of persuasive authority under Kansas law, the Court concludes that it would not be appropriate to extend Kansas law concerning strict liability or liability for breach of an implied warranty to encompass the repair of a product without its sale. Accordingly, the Court awards defendant summary judgment on plaintiffs' strict liability and implied warranty claims.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to exclude expert testimony by plaintiffs' expert Donald Sommer (Doc. # 178) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiffs' motion to exclude expert testimony by defendant's experts Gregory Feith, John Maris, and Allen Parmet (Doc. # 182) is **granted in part and denied in part**. The motion is granted with respect to Dr. Parmet's opinions concerning the pilot's ethanol level, medication side effects unrelated to susceptibility to spatial disorientation, "rogue pilot" behavior, and the credibility of the pilot's spouse, and such testimony will be excluded at trial; the

motion to exclude is denied in all other respects.

IT IS FURTHER ORDERED THAT plaintiffs' motion for summary judgment on defendant's attempt to compare the fault of the pilot (Doc. # 180) is **denied**.

IT IS FURTHER ORDERED THAT defendant's motion for summary judgment on plaintiffs' strict liability and warranty claims (Doc. # 176) is **granted**, and defendant is awarded judgment on those claims.

IT IS SO ORDERED.

Dated this 2nd day of April, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge